IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
MAGISTRATE JUDGE GORDON P. GALLAGHER

Criminal Action No. 16-cr-00169-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT TIMOTHY ALLEN,

    Defendant.

_____

**OPINION AND ORDER APPOINTING STANDBY COUNSEL AND CONTINUING TRIAL**
_____

    **THIS MATTER** comes before the Court *sua sponte*.

    Upon further reflection, although the Court has allowed Mr. Allen to waive his right to counsel under the Sixth Amendment and defend himself *pro se*, the Court nevertheless believes that an appointment of standby and advisory counsel is appropriate.

    The appointment of standby and advisory counsel serves two purposes. First, is ensures that, should Mr. Allen decide that he no longer wishes to proceed *pro se* and wishes to re-invoke his Constitutional right to assistance of counsel, there is an attorney prepared to assume his defense with a minimum of delay. *See e.g. Faretta v. California*, 422 U.S. 806, 834-35 n. 46 (1975). Many courts thus use the label of "standby counsel" to reflect this function. The need for standby counsel is particularly acute as the case proceeds towards trial. Defendants who may have been confident of their abilities to represent themselves during pretrial proceedings sometimes find that confidence wavering as trial approaches or even after it commences. In

order to preserve the time and effort of jurors, witnesses, court staff, and others who have prepared and set aside time to complete the trial, the availability of prepared standby counsel ensures that the trial can proceed smoothly even if the defendant decides to relinquish *pro se* status and request representation by counsel at any point in time.[1]

Second, counsel can serve an advisory role to the *pro se* defendant, providing legal knowledge that the defendant may lack.  A defendant may request advisory counsel to explain general legal principles (*e.g.* the elements of the charges and available affirmative defenses, the burden of proof), rules of procedure, and courtroom protocol that is pertinent to the matters to be addressed at trial; to identify and calculate deadlines; and to advise the defendant regarding the meaning and effect of orders issued by the Court.  Advisory counsel may – but are not required to[2] – choose to further assist a defendant with contacting witnesses, developing theories, and even conducting in-depth research to the extent counsel wishes.

---

[1]     Needless to say, standby counsel's effectiveness will vary depending on the circumstances that occurred before the defendant relinquished *pro se* status.  If the defendant has been uncooperative with counsel's efforts to prepare or if damaging evidence has already been received, it may be difficult or impossible for standby counsel to undo that which has been done. This suggests that, to the extent Mr. Allen might choose to return control of his defense to standby counsel at some point in time, he do so as early as possible.

[2]     It is important to remember that although the Constitution guarantees that <u>defendants</u> have the ability to make certain decisions regarding their critical constitutional rights – *e.g.* the defendant retains the right to decide whether to plead guilty, to waive a jury, to testify in defense, and to appeal – it is also well-recognized that <u>counsel</u> have the right to make other decisions, such as devising a strategy for the defense and making the various tactical decisions necessary to implement that defense, even if the defendant disagrees with those decisions. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004).  This division of authority often leads to friction between defendants who wish to pursue a certain line of defense that their counsel considers irrelevant or fruitless.  There is often a temptation for defendants to attempt to resolve that friction by terminating counsel, thereby seizing the reins of decisionmaking with regard to strategy, then directing advisory counsel to perform the necessary research and preparation to develop the very defenses counsel refused to advance.

But the obligations of advisory counsel do not extend so far.  *See generally U.S. v. Treff*, 924 F.2d 975, 979 n. 6 (10th Cir. 1991) ("It should be noted that a defendant has no right to hybrid representation"). To hold otherwise would reduce advisory counsel's role to that of a

The appointment of standby and advisory counsel does not abridge a defendant's right to defend himself *pro se* in any way. A defendant is not obligated to consult with advisory counsel if he does not wish to, and the preparation for trial by standby counsel will occur entirely independently of any preparation that the defendant himself performs. Thus, the decision to appoint standby and advisory counsel does not turn on Mr. Allen's preferences or consent. *See Faretta*, *id.* at n. 46. Accordingly, the Court finds that the appointment of standby and advisory counsel is important in this case and directs that the Clerk of the Court appoint a member of the Court's CJA panel[3] to serve as advisory and standby counsel for Mr. Allen.

The appointment of advisory and standby counsel requires a reassessment of the trial date. Because standby counsel must be as prepared as possible to assume Mr. Allen's defense at a moment's notice, standby counsel appointed today will need some preparation time. The Court is not sanguine that the less than three weeks remaining before the scheduled trial date of April 1 will suffice, and thus, the Court vacates that trial date and converts the March 28, 2019 Trial Preparation Conference to a Status Conference and Motions Hearing. In addition to hearing any motions that may be filed in the interim at that time, the Court will invite standby counsel to address whether additional time for preparation to assume Mr. Allen's defense is necessary and, if so, how much additional time is required. The Court is cognizant of Mr. Allen's desire to

---

taxpayer-funded paralegal acting at the defendant's command, something neither the Criminal Justice Act nor the Sixth Amendment's guarantee of the assistance of counsel was intended to facilitate. Thus, it is important to define and constrain the services that advisory counsel are <u>required</u> to provide, although they are free to provide whatever additional assistance they <u>choose</u> to deliver.

[3] The Court is advised that Mr. Allen is presently housed on the Front Range, and thus, it may be appropriate that a CJA attorney from the Front Range be assigned.

proceed to trial quickly and thus emphasizes that any continuance of the trial date will be brief.[4] The Court will then set an appropriate trial date at that time.

Accordingly, the trial date of April 1, 2019 is **VACATED**. The Pretrial Conference set for March 28, 2019 is converted to a Status Conference and Motions Hearing. The Clerk of the Court shall appoint a representative from the CJA panel to serve as standby and advisory counsel to Mr. Allen.

Dated this 11th day of March, 2019.

    s/ Gordon P. Gallagher
Gordon P. Gallagher
United States Magistrate Judge

---

[4] The current Speedy Trial calculation is as follows. Mr. Allen had his Initial Appearance on December 12, 2018 **(# 12)**, thus starting the 70-day Speedy Trial clock running. 18 U.S.C. § 3161(c)(1). On December 17, 2018, Mr. Allen's counsel made an oral request to continue the scheduled trial date, and the Court granted **(# 21)** that motion pursuant to 18 U.S.C. § 3161(h)(7)(b)(iv). As the minutes from that hearing reflect, the Court excluded "all time between . . . January 16, 2019 and the new date of April 1, 2019 . . . from the speedy trial calculation." Thus, the Speedy Trial clock ran from December 17, 2018 to January 16, 2019, a total of 35 days. The clock has been tolled since January 16, 2019 and will remain tolled until April 1, 2019, at which time it will resume running with 35 days remaining. Thus, absent a motion to continue or other event tolling the Speedy Trial clock further, Mr. Allen's trial must commence on or before May 6, 2019.