# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO
# SENIOR JUDGE MARCIA S. KRIEGER

Criminal Action No. 16-cr-00169-MSK-GPG

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**ROBERT TIMOTHY ALLEN,**

    Defendant.

---

## OPINION AND ORDER ADDRESSING OUTSTANDING MOTIONS
---

**THIS MATTER** comes before the Court for the purpose of addressing all outstanding motions and other pretrial matters in this case.

This matter is subject to the protocol adopted for cases in Grand Junction. At a hearing on June 21, 2019, the Magistrate Judge issued an oral recommendation **(# 75)** finding that the following motions were pending: (i) Mr. Allen's Motion to Dismiss **(# 37)**; (ii) Mr. Allen's Objection and Demand **(# 54)**, which the Court construes as a motion to dismiss for lack of subject-matter jurisdiction; (iii) Mr. Allen's Motion to Exclude Statements **(# 60)**; and (iv) Mr. Allen's Demand for Dismissal **(# 67)**, which the Court construes as a motion to strike the Government's response **(# 65)** to Mr. Allen's subject-matter jurisdiction motion as untimely.[1] The Magistrate Judge recommended that each of these motions be denied, with the exception of

---

[1] Some, but not all, of Mr. Allen's motions were filed *pro se*. For those motions where Mr. Allen proceeds *pro se*, the Court is mindful of his lack of legal training and therefore construes his filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

the Motion to Exclude Statements, which the Magistrate Judge recommended be granted in part and denied in part.

Mr. Allen filed timely Objections **(# 69)** to the Magistrate Judge's recommendation and supplemented those Objections with a "Response in Detail" **(# 71)**. A few days later, Mr. Allen filed a motion **(# 73)** seeking "a continuance to allow a response in detail" to the Recommendation. The Magistrate Judge granted that motion **(# 74)**, giving Mr. Allen 14 days from the filing of the transcript of the June 21 hearing to file any supplemental Objections. That transcript was filed on July 12, 2019, making Mr. Allen's supplemental Objections due by July 26, 2019. As of the date of this Order, Mr. Allen has not filed any further Objections, and thus, the Court treats Docket #69 and 73 as Mr. Allen's Objections to the Magistrate Judge's Recommendation.

Mr. Allen is charged in a one-count Indictment **(# 1)** with damaging public lands in violation of 18 U.S.C. § 1361. The Government represents that its evidence would show that, beginning in or about July 2013, Mr. Allen engaged in unauthorized gravel mining activity on BLM land in Saguache County, Colorado. BLM rangers spoke with Mr. Allen on several occasions, each time informing him that unauthorized mining on public lands was prohibited. In addition, they issued written orders directing him to cease his activities. Mr. Allen refused to do so, and it is alleged that his unauthorized activities continued into at least May 2014.

**A. Standard of review**

Because the Magistrate Judge's Recommendation with regard to Mr. Allen's motions to dismiss concerns dispositive issues, the Court reviews the objected-to portions of the Recommendation *de novo*. 28 U.S.C. § 636(b)(1)(B). The Recommendation with regard to Mr. Allen's motion to strike and motion to exclude statements addresses non-dispositive matters, and

2

the Court reviews Mr. Allen's objections to those portions pursuant to the "clearly erroneous or contrary to law" standard of 28 U.S.C. § 636(b)(1)(A).

**B. Motion to dismiss (#37)**

In Docket #37, Mr. Allen contends that the charge against him should be dismissed because Mr. Allen "assert[s] possessory title to the valuable mineral lode locations" he is accused of unlawfully mining. He cites to portions of the 1872 Mining Law, including 30 U.S.C. § 22, which provides that "all valuable mineral deposits in lands belonging to the United States . . . shall be free and open to exploration and purchase [ ] by citizens . . . under regulations prescribed by law"; and 30 U.S.C. § 26, which provides that persons making claims on mineral lodes "shall have exclusive right of possession and enjoyment " of surface rights, "so long as they comply with the laws of the United States." At the June 21 hearing, Mr. Allen argued that the thrust of this motion was that the Government "is trying . . . to force the valuable mineral locator" – that is, Mr. Allen – "to give up his rights under the 1872 mining law of exclusive possession."

The Magistrate Judge found that Mr. Allen was raising factual arguments akin to a Motion for Judgment of Acquittal under Fed. R. Crim P. 29 and recommended that the motion be denied as premature because the Government had not presented its evidence.

The Court has reviewed Mr. Allen's Objections and finds nothing that specifically objects to this finding. Even if Mr. Allen had objected, the Court, upon *de novo* review of Mr. Allen's motion, would deny it. The statutes Mr. Allen relies upon, quoted above, make clear that an individual who locates minerals on public lands and claims the right to mine them must still "comply with the laws of the United States." The Bureau of Land Management ("BLM") has issued various regulations that apply to persons claiming rights under various mining laws,

including those cited by Mr. Allen. The applicable regulations depend, in large part, on the type of mining that is contemplated. The record is not entirely clear as to what type of mining Mr. Allen was doing, but the Court understands that Mr. Allen was mining to produce gravel.

The BLM's regulations governing the mining of gravel on public lands can be found generally at 43 C.F.R. § 3601 *et seq.*[2] *See e.g.* 43 C.F.R. § 3601.5 (defining "mineral materials" to refer to "common varieties of . . . gravel"). The regulations provide that persons cannot "extract, sever, or remove mineral materials from public lands . . . unless BLM . . . authorizes the removal by sale or permit." 43 C.F.R. § 3601.71(a). The Court understands that the Government's position is that Mr. Allen lacked the required BLM permit or other legal authorization to remove gravel from the lands, and thus, the Government has at least a colorable argument that Mr. Allen's actions were not in compliance with BLM regulations and thus, not in compliance with the 1872 Mining Law. As such, the Government has articulated a colorable claim that Mr. Allen violated 18 U.S.C. § 1361. Accordingly, the Court finds that Mr. Allen's Motion to Dismiss must be denied.

### B. Motion to Dismiss (# 54)

In his motion at Docket # 54, Mr. Allen makes a "demand for disclosure of the constitutional authority that gives the court the capacity to take jurisdiction and enter judgments, orders, and decrees in favor of the United States arising from a criminal or civil proceeding regarding a debt in Saguache County, Colorado." In arguing the motion at the June 21 hearing, Mr. Allen explained that the Government's response to the motion "gave the statutory authority

---

[2] The Government's response to Mr. Allen's motion references various subsections of 43 C.F.R. § 3809. That subpart applies to "operations that involve locatable minerals" of various definitions. 43 C.F.R. § 3809.2(e). But it distinguishes between those and "salable minerals" – such as "common varieties of sand [and] gravel" – stating that that subpart "does not apply to leasable and salable minerals."

but not the constitutional authority asked for." When the Government responded that it was relying on both statutory authority under 18 U.S.C. § 3231 (giving federal courts jurisdiction over federal crimes) and constitutional authority under Article IV (giving Congress the right to make laws regarding federal property, which resulted in 18 U.S.C. § 1361, the offense charged here), Mr. Allen responded that "Article IV, Section 3, Clause 2 applies only to Washington D.C. and the territories not within the Union." Mr. Allen also offered a lengthy argument contending that the "United States means a federal corporation" and various other contentions that need not be recited here.

The Magistrate Judge recommended that Mr. Allen's motion "be denied for the reasons essentially as set forth by the Government in their response," and explained that Mr. Allen's arguments were "a complete misconstruction of the law."

Mr. Allen's Objections at Docket #71 consist of text copied from a source that Mr. Allen identifies as "U.S. v. Trowbridge No. 914-cv-138." The text in question appears to be from a brief or article arguing that, among other things, "all federal civil and criminal proceedings fall under . . . federal debt collection procedure" and that "actors in government rely on cognitive dissonance on the part of victims of the federal word game to perpetrate fraud, commit treason to the constitution, and subject the American People to District of Columbia municipal law."

Although it is not clear what document the quotations are drawn from, it appears that the "U.S. v. Trowbridge" to which Mr. Allen refers is either *U.S. v. Trowbridge*, 591 Fed.Appx. 298 (5th Cir. 2015), *cert. denied* 135 S.Ct. 2816 (2015), or a case involving that same litigant. *Trowbridge* involved an action by the government to reduce Mr. Trowbridge's unpaid income tax liabilities to judgment. It appears that Mr. Trowbridge responded with a bevy of arguments that "Harris County[, Texas] is not in the United States" and that the "district court did not have

subject matter jurisdiction over tax actions against residents of states," among others.  The court rejected these arguments as "frivolous" and "shopworn arguments characteristic of tax-protestor rhetoric that has been universally rejected by this and other courts." *Citing Stearman v. Commissioner*, 436 F.3d 533, 537 (5th Cir. 2006).  It noted that "this is not the first time Trowbridge has had these frivolous arguments rejected," listing several prior actions.  As a result of Mr. Trowbridge's history of frivolous appeals, the Court of Appeals sanctioned him in the amount of $8,000 and barred hm from filing future appeals in the Fifth Circuit unless a district court certified the matter.

This Court finds that the quotations cited by Mr. Allen and his reference to the *Trowbridge* case or cases are inapplicable to this matter. They are frivolous, rely on a mistaken or deliberate misunderstanding of basic legal principles, and have been roundly rejected by every court to encounter them.  The 10th Circuit has recently rejected similar arguments offered by a convicted criminal defendant. *See U.S. v. Griffith*, 928 F.3d 855, 865 (10th Cir. 2019) ("Mr. Griffith contends that the United States lacked jurisdiction to prosecute him," raising arguments such as "the federal government does not have common-law jurisdiction to prosecute crimes" and "Congress improperly gave power to a corporation known as the United States of America [who] ha[s] no authority over the several Union States," arguments the 10th Circuit rejected as "unintelligible" and "frivolous").  The Government correctly notes that by operation of Article III, Section 2 of the United States Constitution, this Court's "judicial Power" extends to "all Cases . . . arising under . . . the Laws of the United States" which specifically include violations of 18 U.S.C. § 1361. See: 18 U.S.C. § 3231   In addition, Article IV, Section 3, Clause 2 of the United States Constitution provides Congressional authority to manage federal property.

Accordingly, the Court denies Mr. Allen's motion to dismiss this action for lack of subject-matter jurisdiction.

### C. Motion to Strike

Mr. Allen's motion at Docket #67 takes issue with the timeliness of the Government's response to his subject-matter jurisdiction motion. Mr. Allen explains that he filed his jurisdictional challenge on May 8, 2019 and that "the statutory period for plaintiff United States to respond . . . is 14 days." Because no response was received from the Government within that time, Mr. Allen seeks "dismissal with prejudice of this alleged case" for the reasons set forth in his jurisdictional challenge.

The Magistrate Judge found that "there was a response timely filed," explaining that the Court had specifically granted the Government an extension of time **(# 55)** to respond to his motion and the Government's response was filed within that extension.

Mr. Allen's Objections at Docket #69 specifically address this issue. He again refers to a "the statutory 14 day response time" (without citing to said statute) and contends that "Judge Krieger moved the (my) filing date from 5/8/2019 to 5/15/2019, thereby putting the Plaintiff and/or the Court response within the statutory 14 day period. This action by Judge[ ] Krieger . . . is an illegal outrage and an affront to my rights."

No federal statute (or rule of criminal procedure) dictates the time in which a party in a criminal proceeding must respond to a motion. Indeed, Fed. R. Crim. P. 12(c)(2) specifies that, the court may extend or reset the deadline for pretrial motions. The Court's Local Rules also set no deadline for the filing of responses. Thus, in criminal cases deadlines for the filing of responses to motions is set by the Court in case-specific orders.

Here, the Magistrate Judge initially set a deadline of March 4, 2019 for the filing of motions, and a deadline of March 25, 2019 for responses, allowing a response period of 21 days. *Docket* # 21. Later, the Court set a new motions deadline of May 8, 2019, and a deadline for responses of May 22, 2019, allowing a response period of 14 days. *Docket* # 49. When Mr. Allen filed his "Objection and Demand" on May 8, 2019, it was not initially understood by the Clerk of the Court to be a motion, and on May 15, 2019, the Court entered an Order characterizing Mr. Allen's filing as a motion and directing the Government to respond within 14 days. *See Docket* # 55. Absent instructions to the contrary, an order directing a party to take some action within a specified time is commonly-understood to mean "from the date of the order." Thus, the Government's response to Mr. Allen's motion, filed on May 28, 2019, was filed within 14 days from the Court's May 15, 2019 Order. Accordingly, the Court agrees with the Magistrate Judge that the Government's response was timely filed within the parameters set by the Court.

The Court notes, however, that even if the Government's response was untimely and therefore not considered, the outcome would not be the granting of Mr. Allen's motion and dismissal of the charge against Mr. Allen. A party's failure to respond to a motion does not require that the motion itself be granted automatically; rather, the court must still examine the motion on its merits and determine whether the arguments contained therein have merit. *See e.g. Persik v. Manpower, Inc.*, 85 Fed.Appx. 127, 130 (10th Cir. 2003). For the reasons set forth above, Mr. Allen's challenge to this Court's jurisdiction is without any substantive merit. Accordingly, Mr. Allen's motion to strike is denied.

### D. Motion to Exclude Statements

Finally, Mr. Allen moves to exclude "conversations [he] had with law enforcement" – apparently between his indictment in May 2016 and his eventual arrest in December 2018 – "concern[ing] the issue of whether Mr. Allen would be turning himself in." Mr. Allen moves to exclude references to these conversations pursuant to Fed. R. Evid. 401, 403, and 404(b). Mr. Allen also moves to exclude "the entire conversation he had with an undercover agent in 2017, where Mr. Allen was contacted by phone regarding an ad he placed in the newspaper." The motion does not elaborate substantially about the contents of this conversation but does mention that "Mr. Allen spoke of his fondness for the Bundy case in Nevada, how he was wanted, and implied that he would use force to avoid arrest." Mr. Allen alleges that such statements are inadmissible under Fed. R. Evid. 401 and 403.

At the June 21 hearing, the Magistrate Judge found that Mr. Allen's motion to exclude statements regarding turning himself in were moot, as the Magistrate Judge has previously advised the Government that the relevance of such statements would be determined by the judge at trial. Mr. Allen has not filed Objections that relate to this ruling by the Magistrate Judge, but to the extent that this Court should review the Magistrate Judge's ruling, it would reach the same conclusion. Issues of relevance under Rules 401 and 403 are particularly difficult to evaluate prior to trial, as the precise content of the evidence in question and its context within the trial as a whole are not yet known. Thus, the Court typically denies pre-trial motions of the sort raised by Mr. Allen without prejudice, allowing the matter to be raised, if necessary, when and if the evidence in question is broached at trial. Often times, the Court couples such a ruling with a directive to the proponent of the evidence to not mention such evidence during opening statements and to advise the Court immediately before it intends to put on the evidence, thereby

allowing the Court to take a proffer and rule on an objection outside the presence of the jury. The Court sees no reason why such a procedure should not be followed here.

As to Mr. Allen's second request – to exclude statements he made to the undercover agent – at the June 21 hearing, the Government clarified that it had no intention of offering statements by Mr. Allen concerning the Bundy incident or him using force to avoid arrest. Thus, as to the bulk of Mr. Allen's statements, his request is moot.

The Government indicated that it did intend to use a small portion of that conversation, wherein Mr. Allen told the agent something to the effect of "any time you set up a mining claim in the public domain, you are in violation of their regulations." The Government argued that such a statement by Mr. Allen would be probative of the *mens rea* element of the charged crime. The Magistrate Judge granted Mr. Allen's request to exclude the other statements but held that the statement about mining claims on public lands was relevant and that "the Government will be able to use that statement in their case in chief."

The Court's review of Mr. Allen's Objections does not reveal any argument directed to the Magistrate Judge's ruling on any aspect of the Motion to Exclude. Thus, and finding that the Magistrate Judge's ruling was neither clearly erroneous nor contrary to law, the Court adopts the Recommendation. The Motion to Exclude is granted in part and denied in part on the terms set forth by the Magistrate Judge.

### E. Conclusion

For the reasons stated above, the Court **OVERRULES** Mr. Allen's Objections **(# 69, 71)** and **ADOPTS** the Magistrate Judge's Recommendation **(# 68)**. Mr. Allen's Motion to Dismiss **(# 37)**, Objection and Demand **(# 54)**, and Demand for Dismissal **(# 67)** are **DENIED**. Mr.

Allen's Motion to Exclude Statements **(# 60)** is **GRANTED IN PART AND DENIED IN PART** on the terms set forth by the Magistrate Judge at the June 21 hearing.

Dated this 1st day of August, 2019.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge