IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER

Criminal Action No. 16-cr-00169-MSK-GPG

**UNITED STATES OF AMERICA,**

 Plaintiff,

v.

**ROBERT TIMOTHY ALLEN,**

 Defendant.

_____

**OPINION AND ORDER ADDRESSING RESTITUTION**
_____

 **THIS MATTER** comes before the Court pursuant to an evidentiary hearing on June 23, 2021, for the purposes of determining an appropriate restitution award pursuant to 18 U.S.C. §3663(A).

## BACKGROUND

 Beginning at some point in early 2013, without a permit or other legal authorization, Mr. Allen began mining on land owned by the Bureau of Land Management ("BLM") known as the "Vulcan area." Mr. Allen had dug several "pits" by the time his activities were discovered by BLM staff and the BLM began an investigation into the matter.

 Attempts to secure Mr. Allen's voluntary cessation of his unauthorized mining failed. On July 22, 2013, the BLM sent a letter to Mr. Allen advising him that his activities were unlawful. Mr. Allen was unpersuaded and continued to mine in the Vulcan area. This led to the Indictment in this action which charged Mr. Allen with a single count of Depredation of Government Property in violation of 18 U.S.C. § 1361. Of pertinent note, the Indictment alleged that the

1

illegal conduct occurred between July 24, 2013 (that is, after Mr. Allen had received the BLM's letter) and May 22, 2014.

Mr. Allen was convicted on the charge. At the time of sentencing, the Court addressed the issue of restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §3663(A). Based on evidence presented at trial that the cost of remediating all pits dug by Mr. Allen was $20,300, the Court imposed restitution in that amount. Mr. Allen appealed his conviction and sentence, and on December 17, 2020, the 10th Circuit affirmed the conviction, but reversed the Court's restitution order. *U.S. v. Allen*, 983 F.3d 463 (10th Cir. 2020). The 10th Circuit explained that the MVRA authorizes the imposition of restitution only for losses caused by the conduct underlying the offense of conviction. *Id.* at 472. The 10th Circuit noted that the record at trial indicated that Mr. Allen had dug approximately 15 pits over the entirety of his misadventure and that the $20,300 figure reflected the cost of remediating <u>all</u> of those pits. But the Indictment was temporally limited to a shorter period of time and thus, the Court's restitution order could only extend to the losses caused by conduct that occurred <u>during</u> the period specified in the Indictment – July 24, 2013 to May 22, 2014 (hereafter, Indictment period). Thus, the 10th Circuit remanded the matter to this Court to recalculate the amount of restitution owed.

After consultation with counsel, the Court conducted an evidentiary hearing limited to address the issue of restitution. The Government took the position that the new restitution amount should continue to be $20,300,[1] reflecting an estimate of $14,207 to repair the pits that

---

[1] The Government's justification for this sum is curious. At Mr. Allen's trial and his sentencing, the Government represented that this figure reflected the single credible estimate that the BLM had received for the cost of remediating all 15 pits dug by Mr. Allen. At the evidentiary hearing on remand, the Government offered an entirely different justification for the same sum - that it reflected the amount of the bond that the BLM would have required Mr. Allen to post had he properly applied for permission to engage in the mining activities. This latter justification for the $20,300 figure is not supported by any evidence adduced at either the trial or

2

Mr. Allen dug during the Indictment period, plus approximately $6,100 of the more than $70,000 that the BLM had incurred in a cadastral survey of the area conducted between October 2013 and May 2014.  Mr. Allen objects to several aspects of the Government's position, particularly the Government's attempt to seek restitution for the survey costs.  The Court has received and considered the parties' briefing, the testimony presented, and the parties' oral argument.  Accordingly, the Court makes the following findings of fact and law.

## **FINDINGS OF FACT**

1.  The record before the Court consists of the following: the hearing testimony of Rebecca Bruno and David Lazorchak on June 23, 2021, and five exhibits tendered by the Government, one of which was a transcript of a portion of the trial testimony of Robert Oswald.  Neither party requested the Court to take notice of any other prior testimony offered during the trial in this case and the Court declines to independently do so, except as may be specifically noted herein.

### **A.  Identifying the pits covered by the Indictment**

2.  In order to determine the appropriate restitution for the conduct described in the Indictment, the Court must first determine what pit(s) were dug by Mr. Allen during the Indictment period -- between July 24, 2013 and May 22, 2014.  Based on the record before the Court, this task is more difficult than it appears.

---

the evidentiary hearing.   Moreover, there is no argument that, characterized as such, it would represent compensable restitution.  The Court acknowledges that the BLM "wants" the sum of $20,300, but there is a difference between wanting it and there being a legal justification for its award as restitution.

3

3. It is not clear from the record as to when Mr. Allen began his mining activities in the Vulcan, but those activities came to the attention of BLM officials at some time in or about June 2013. By that time, Mr. Allen had already dug several pits.

1. **The Government's methodology for identifying Indictment period pits**

4. The Government does not profess to have specific knowledge as to when most of the pits in question were dug. Instead, it seeks to establish the identities of the pits dug during the Indictment period through a sort of negative inference or "subtraction" method. Exhibits 1 and 2 are the key components of this method.

5. Exhibit 1 is a comprehensive map of the Vulcan area, prepared by Ms. Bruno pursuant to a cadastral survey she conducted between November 2013 and approximately November 2014. Exhibit 1 identifies the boundaries of the BLM's Vulcan area holdings and indicates the location of every pit found on the surface during Ms. Bruno's survey. The map shows a total of 17 pits, each labeled with a letter. The record at the restitution hearing did not address whether Mr. Allen was alleged to be responsible for all 17 pits, but for purposes of this ruling, the Court will assume that he was.

6. Exhibit 2 is a series of satellite photos annotated by Mr. Oswald, identifying those areas of surface disturbance he personally observed during his visit to the Vulcan area on July 22, 2013.[2] The critical portions of Exhibit 2 are pages 4 and 6, on which Mr. Oswald outlined the specific locations where he observed surface disturbances during this on-site inspection.

---

[2] Mr. Lazorchak conducted a separate inspection of the Vulcan area on or about July 2, 2013. Mr. Lazorchak's testimony was less detailed about his findings than Mr. Oswald's and, to some degree, Mr. Lazorchak seemed to defer to Mr. Oswald's later-in-time observations. For purposes of this discussion, the Court will aggregate the testimony of both witnesses about their inspections and refer to Mr. Oswald as the source of that combined testimony.

7. The Government argues that Exhibit 2 serves as a baseline, identifying every pit that currently existed at the time the Indictment period began on July 24, 2013. The Government contends that by subtracting those pits shown on Exhibit 2 from the full catalog of pits depicted on Exhibit 1, one can assume that the remaining pits were necessarily dug during the Indictment period.

8. Ms. Bruno concluded that the pits identified by Mr. Oswald on page 4 of Exhibit 2 were the pits labeled as N, M, and L. Ms. Bruno concluded that the pits identified by Mr. Oswald on page 6 of Exhibit 2 as being pits B, C, D, E, and F.

9. The parties agree that pits D and E are located on private land, and thus are not germane to the charges against Mr. Allen.

10. Based on this, the Government argues that all other labeled pits on Exhibit 1, namely pits A, G, H, I, J, K, O, P, and Q, must have been dug during the Indictment period.

**2. Defects in the Government's methodology**

11. The Government's "subtraction" approach might be conceptually sound, but the accuracy of its conclusions depends on at least two critical assumptions: (i) that Exhibit 2 is a comprehensive baseline of all pits in existence as of the start of the Indictment period, and (ii) that every pit dug thereafter was dug prior to the May 22, 2014 date that the Indictment period closed. As discussed below, neither assumption is borne out by the record.

12. Turning first to the "baseline" of pre-Indictment pits as shown in Exhibit 2, Mr. Oswald seemed to testify that the satellite photos and outlines in Exhibit 2 did not necessarily depict "all of the disturbances that I observed in the field." Mr. Oswald opined that the satellite images were taken "sometime [ ] not too long before I was out there," implying that he observed additional areas of disturbance that were not shown (and not highlighted) in the satellite photos

5

in Exhibit 2. Mr. Oswald testified that "when I was in the field, I did see several more [disturbed areas] that were up near those upper left and lower right clusters," appearing to refer to additional areas were not themselves outlined on Exhibit 2. Although the Government proffered only a portion of Mr. Oswald's trial testimony for purposes of the restitution hearing, the Court has reviewed the entirety of Mr. Oswald's trial testimony and finds that Mr. Oswald did not further clarify the question of what disturbances he observed that were not shown on Exhibit 2. Mr. Oswald did not testify in person at the restitution hearing, and thus, the transcript of his trial testimony is the entirety of the evidence on this point.

13. As a result, the Court is unable to adopt one of the assumptions critical to the Government's theory: that Exhibit 2 depicts every pit that had been dug by July 22, 2013. Mr. Oswald's testimony suggests that he observed other pits during his inspection that were not shown on Exhibit 2, but nothing in the record would permit the Court to identify those additional pits for purposes of establishing a pre-Indictment baseline.

14. Moreover, Exhibit 2 can only serve as a comprehensive catalog of pre-Indictment pits if Mr. Oswald (or Mr. Lazorchak) diligently examined the entirety of the Vulcan area and logged the location of every visible surface disturbance. Neither witness testified that their inspection was so thorough and documented. Indeed, as noted above, Mr. Oswald specifically testified that Exhibit 2 was <u>not</u> a complete identification of every pit that he observed during his site visit.

15. The Government's second assumption is that all of the pits that are shown on Exhibit 1 but not on Exhibit 2 were necessarily dug during the Indictment period. This assumption is also belied, at least in part, by the record.

6

16. Ms. Bruno testified that she personally observed Pits P and Q as having been created at some point between October 25 and October 30, 2014. The Court infers from Ms. Bruno's testimony that she observed the area in question in an undisturbed state prior to October 25, 2014, and observed newly-dug pits in that same location when she returned on October 30 or 31, 2014. A notation on Exhibit 1 confirms the dates of the creation of pits P and Q as October 2014. Because the Indictment period ended on May 22, 2014, pits P and Q are not encompassed by the charges herein and cannot give rise to a restitution award.

17. There is no evidence in the record that purports to depict the state of the Vulcan area as of the May 22, 2014 ending of the Indictment period. Roughly six months passed between that date and Ms. Bruno's completion of the cadastral survey in November 2014 and, presumably, the creation of Exhibit 1. Ms. Bruno specifically testified that she lacked personal knowledge of the creation date of any pits other than P and Q, and nothing in the record indicates that Mr. Lazorchak or Mr. Oswald re-inspected the Vulcan site after their initial inspection in July 2013. In short, even if the Court could accept the Government's argument that pits A, G, H, I, J, K, and O were dug after the July 24, 2013 start of the Indictment period, there is no evidence in the record whatsoever that would allow the Court to also conclude that those pits were dug <u>before</u> the Indictment period closed on May 22, 2014.

18. Thus, the Court cannot find that the Government has proven by a preponderance of the evidence that any pits were dug during the period from July 24, 2013 to May 22, 2014.[3]

---

[3] This is not to say that the evidence at trial was insufficient to support Mr. Allen's conviction. At trial, Derek Chodorowski, a BLM official, testified that he visited the Vulcan area in October 2013 (during the Indictment period) and observed Mr. Allen engaging in surface-disturbing activities. This is sufficient to prove the charge against him, but without further evidence as to the particular pit where the activity occurred and the nature and extent of the disturbance, it is insufficient to support a determination of loss or an award of restitution.

7

19.  Because the Court cannot conclude that the Government established that any of the identified pits were dug during the Indictment period, the Court cannot make a restitution award to reflect the costs for remediation of any pit.

**B.  Survey costs**

20.  In addition to requesting restitution for remediation of the pits, the Government requests restitution for some portion of the cost of the cadastral survey of the Vulcan area that was performed by Ms. Bruno.  The Government argues that the survey was part of the investigation into Mr. Allen's conduct, and was necessary to determine which pits dug by Mr. Allen were located on BLM land.

21.  Ms. Bruno testified that the survey was "a lengthy and complicated" one, due to the fact that the boundaries of the Vulcan area were based on survey data dating back to the 1880s. Ms. Bruno also testified that vast majority of the time spent conducting the survey was devoted to verifying the overall boundaries of the Vulcan area.  She explained that "the biggest issue was determining the [what] the public limits of the public domain land was."  By contrast, she testified that the effort to locate and map the locations of the actual pits was "fairly easy" and the time devoted to that task was "minimal, because the pits are easy to identify on the grounds, as well as through imagery."

22.  Ms. Bruno testified that "I did have to walk the perimeters of the disturbed areas several times, but that would have been maybe 3 days" of surveying time.  Exhibit 4 is a chart of surveying costs that recites that the cost of a survey crew was approximately $600 per day.  She was not asked to break that estimate down in greater detail.

---

Notably, the Government did not proffer or refer to Mr. Chodorowski's testimony for purposes of the restitution hearing.

23. As explained above, the Government has not established which, if any, of the pits shown on Exhibit 1 were dug during the Indictment period. Without a determination of pits dug during that Indictment period, there can be no allocation of some portion of the survey cost to investigate the offense conduct.

24. In addition, the record seems to suggest that the survey was conducted in response to pits dug <u>before</u> the Indictment period. Ms. Bruno did not testify extensively about the circumstances that led to the BLM's request that she survey the Vulcan area – all that she states is that her supervisor, Brian St. George, asked her in November 2013 to begin a survey. The only evidence in the record at the restitution hearing of the BLM's knowledge of pits dug in the Vulcan area before November 2013 was Mr. Lazorchak and Mr. Oswald's observations of pits having been dug. The only reasonable inference, then, is that it was Mr. Oswald and Mr. Lazorchak's observations that triggered the request for Ms. Bruno to conduct a survey. And the record is clear that Mr. Lazorchak and Mr. Oswald only ever observed pits dug <u>prior to</u> the Indictment period.

25. The Court also has some doubts as to whether a cadastral survey was – or at least should have been -- necessary for the BLM to determine whether Mr. Allen's conduct was conducted on publicly-owned land. It might be unreasonable to expect government agencies to be able to state <u>with precision</u> where public land boundaries begin and end, particularly in remote or difficult areas. But it is reasonable to expect that agencies have at least an <u>approximate</u> working understanding of the boundaries of their holdings. Arguably, some of the pits shown in Exhibit 1 are close enough to private land boundaries that it might have been difficult for BLM officials to state with certainty that those pits were indeed located on BLM land. But other pits shown in Exhibit 1 are hundreds of yards away from any arguable private land boundaries and

likely would not have required a cadastral survey in order for a BLM official to state with confidence that the pit was dug on public land.[4]  Thus, once again, the determination of which particular pits were dug during the Indictment period is essential to the restitution question.  Pits that are far from private land boundaries are less likely to warrant a restitution award that included survey costs.  Because the Government has not demonstrated which particular pits were dug during the Indictment period, the Court finds that an award that includes substantial costs for surveying the area would be unreasonable.

26. As a result, the Court finds that the Government has not established that any of the survey costs are tied to the investigation or prosecution of Mr. Allen for pits dug during the Indictment period.

## CONCLUSIONS OF LAW

18 U.S.C. § 3663(A) provides that a sentencing court "may order . . . that the defendant make restitution to any victim of such offense."   In doing so, the Court must consider: (i) the amount of loss sustained by each victim as a result of the offense, and (ii) the financial resources of the defendant [and] the financial needs and earning ability of the defendant."  18 U.S.C. § 3663(B)(i).  As the 10th Circuit made clear in its order reversing the prior restitution award, restitution applies "only for losses caused by the conduct underlying the offense of conviction."  *Citing Hughey v. U.S.*, 495 U.S. 411, 416 (1990).  Thus, the Court's focus is on determining only those injuries that the BLM sustained as a result of Mr. Allen's digging of pits between July 24, 2013 to May 22, 2014.

---

[4]   For example, pit J is directly adjacent to a road that runs north-south through the Vulcan area parcel.  Presumably, the BLM would have some understanding as to whether that road was publicly- or privately-owned, if nothing else for determining any issues relating to access or maintenance of the road.  If the BLM knew that the road was on public land, the BLM could readily have concluded, even without a survey, that the adjacent pit was also on public land.

The Government bears the burden of proving, by a preponderance of the evidence, that Mr. Allen's conduct caused the injuries suffered by the BLM. *U.S. v. Camick*, 796 F.3d 1206, 1223 (10th Cir. 2015). The Government must show both that Mr. Allen's charged conduct was the "but for" and proximate cause of the BLM's injuries. *Id.* The Government must also prove the amount of restitution that is appropriate, and although that amount need not be established with "absolute precision," the losses cannot be speculative. *U.S. v. Maynard*, 984 F.3d 948, 964 (10th Cir. 2020).

For the reasons set forth above, the Court finds that the Government has not carried its burden of showing, by a preponderance of the evidence, that Mr. Allen's activities <u>during</u> the Indictment period resulted in particular, quantifiable losses suffered by the BLM. Without a reasonable, non-speculative identification of the pits at issue, the Court cannot reasonably determine the reasonable costs for surveying or repairing those pits. Accordingly, the Court finds that no restitution amount is warranted on the facts presented here. The 10th Circuit's ruling vacated that portion of Mr. Allen's Judgment **(# 107)** that called for payment of restitution. Because the Court finds that no restitution award is appropriate, no further modification to the

Judgment is necessary.[5]  All remaining matters having been addressed, the Clerk of the Court shall close this case.

Dated this 21st day of July, 2021.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge

---

[5] Mr. Allen has raised several arguments, mostly challenging the Government's ability to seek restitution relating to the costs of the cadastral survey.  Because the Court finds that no restitution award relating to that survey is appropriate as a factual matter, the Court need not reach those legal arguments.